IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18 CV 296

BILLIE S. FREDELL, )
 )
                Plaintiff, )
 )
v. )    MEMORANDUM AND
 )    RECOMMENDATION
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration, )
 )
                Defendant. )
 )

      This matter is before the Court on the parties' cross motions for summary judgment (Docs. 9, 11), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be granted and the Commissioner's motion for summary judgment be denied.

## I. Procedural History

      On January 24, 2014, Plaintiff Billie S. Fredell ("Plaintiff") filed an application for disability insurance benefits. Transcript of Administrative Record ("AR"), p. 243. Plaintiff's claim was initially denied on June 16, 2014, and subsequently upon reconsideration. AR pp. 89 & 111. Plaintiff thereafter filed a written request for a hearing and a hearing was held on August 23,

1

2017, in Charlotte, North Carolina, where Plaintiff appeared and testified. AR pp. 42-71.

On September 19, 2017, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 19-35. The Appeals Council denied Plaintiff's request for review of that decision on August 21, 2018. AR pp. 1-6.

On October 18, 2018, Plaintiff filed the instant action. See, Doc. 1. Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See, 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the

2

impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant is capable of performing other work, considering the claimant's RFC, age, education, and past work experience. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ determined that Plaintiff had the severe impairments of "degenerative disc disease; obesity; osteoarthritis of the knees; mood disorder; and anxiety disorder." AR p. 24. The ALJ further found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except she was limited to frequent postural limitations in all postural spheres, no more than frequent overhead reaching bilaterally, was capable of performing simple, routine, and repetitive tasks for two-hour intervals throughout the day for the duration of the workday,

3

and was limited to no concentrated exposure to cold, wetness, or hazards such as moving machinery or unprotected heights. She was further restricted to a stable work environment, one that does not have frequent changes.

AR pp. 26-27.

Utilizing this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but that Plaintiff could perform other work, including the representative occupations of electronics worker, laundry folder, and hand packager, such that Plaintiff was not disabled from November 19, 2015 (Plaintiff's amended alleged disability onset date) through March 31, 2016 (the date Plaintiff was last insured). AR pp. 33-34.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applied the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

4

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Analysis

### A. Plaintiff's Allegations of Error

Plaintiff raises four issues in her Motion for Summary Judgment. First, Plaintiff argues that the ALJ failed to identify and resolve apparent conflicts between the testimony of the vocational expert ("VE") and the descriptions of the representative occupations. Second and third, Plaintiff argues that the ALJ failed to weigh certain limitations in connection with a functional capacities exam ("FCE") and as subsequently referenced by one of her treating physicians. Fourth, Plaintiff argues that the RFC developed by the ALJ is not supported by substantial evidence because the ALJ failed to conduct "a proper function-by-function analysis" of Plaintiff's impairments and failed to provide "a logical bridge" between the evidence in the administrative record and the RFC.

5

## B. Conflict Between the VE Testimony and the DOT

The Dictionary of Occupational Titles ("DOT") and its companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") "are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." Pearson v. Colvin, 810 F.3d 204, 205, n. 1 (4th Cir. 2015). Accordingly, "an ALJ must ensure that any 'apparent' conflicts between [these sources] and the VE's testimony are reasonably resolved." Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019).

Here, the VE identified the representative occupations of electronics worker, laundry folder, and hand packager. Plaintiff contends, however, that the jobs of laundry folder and electronics worker are inconsistent with limitations recognized by the ALJ, and that there is a conflict between all three representative occupations and Plaintiff's reasoning ability.[1]

---

1 Plaintiff also argues that the RFC "does not include 'the option to alternate between sitting and standing every thirty minutes" and fails "to include any restriction for her moderate limitations for interacting with others." Doc. 10, p. 7. Plaintiff is correct that the ALJ "limited [Plaintiff] to light work with the option to alternate between sitting and standing every thirty minutes" and found, in the context of considering Plaintiff's mental impairments at steps 2 and 3 of the sequential analysis, that Plaintiff had "moderate" limitations in her ability to interact with others. See, AR pp. 30 & 26. Although neither of these limitations are included in the RFC, the ALJ confirmed with the VE during the August 23, 2017 hearing that the occupations of electronics worker, laundry folder, and hand packager would still be available to a hypothetical claimant of Plaintiff's age, educational background and work background who also required no more than occasional interaction with the public

6

### 1. The DOT/SCO and Environmental Exposures

Plaintiff argues that because "the job of Folder involves the constant presence of Wet and/or Humid environmental conditions," it conflicts with the RFC limitation that Plaintiff have "no concentrated exposure" to cold or wetness. Doc. 10, p. 8. Plaintiff further argues that "the job of Electronics Worker involves occasional exposure to toxic, caustic chemicals" and that such exposure conflicts with her RFC which indicates she should have "no concentrated exposure" to "hazards such as moving machinery or unprotected heights." Id.

With respect to Plaintiff's argument regarding exposure to cold or wetness, the Commissioner recognizes that "the DOT description admittedly lists constant exposure to humidity/wetness…," Doc. 12, p. 8, and the undersigned agrees that this description appears to raise a conflict with the RFC limitation of "no concentrated exposure to…wetness…." However, the

---

and a sit-stand option. See, AR p. 68 (confirming jobs would still be available with the additional limitation of "no more than occasional contact with the public"); p. 66 (including "[a] sit-stand option…at a 30-minute interval" in the hypothetical posed to the VE). Because the representative jobs relied on by the ALJ in determining that Plaintiff is not disabled were explicitly confirmed to include the limitations Plaintiff argues were improperly omitted from her RFC, failure to include such limitations in the RFC is harmless error and does not necessitate remand. See, Ferguson v. Berryhill, 1:18cv220-MOC, 2019 WL 2011055, at * 4 (W.D.N.C. May 6, 2019) (finding plaintiff's arguments in support of social security appeal "have not satisfied her burden of alleging, let alone proving, harmful error.") (citing, *inter alia*, Garner v. Astrue, 436 Fed. Appx. 224, 226 n. * (4th Cir. 2011) (applying harmless error standard in social security disability case)).

7

ALJ's failure to resolve this apparent conflict was harmless error. The representative occupations of electronics worker (for which the VE testified there are 10,000 jobs nationally) and hand packager (for which the VE testified there are 84,000 jobs nationally) remain available and since Plaintiff "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled under the Act." Richardson v. Berryhill, 5:15-cv-173-RJC-DSC, 2019 WL 1354042, at * 4 (W.D.N.C. March 26, 2019) (citing, Guiton v. Colvin, 546 F. App'x 137, 142 (4th Cir. 2013) (recognizing that in Hicks v. Califano, 600 F.2d 1048 (4th Cir. 1979), the court found 110 jobs in the claimant's state to be a significant number of jobs)); Hodges v. Apfel, 203 F.3d 820 (4th Cir. 2000) ("Hodges asserts that he qualifies for no more than 153 jobs. That number suffices to defeat Hodges's claim for disability benefits."); see also, Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (finding that the Commissioner need show only one job to meet her burden at Step Five).

Next, the undersigned is not persuaded by Plaintiff's argument that the RFC limitation of "no concentrated exposure to…hazards such as moving machinery or unprotected heights" includes a prohibition against concentrated exposure to toxic, caustic chemicals. The RFC states that Plaintiff is "limited to no concentrated exposure to…hazards *such as* moving machinery or unprotected heights." Emphasis added. This phrasing does not indicate that

8

the "hazards" referred to by the ALJ were meant to include all possible dangers or conditions in any work setting but instead are limited to the types of physical, industrial hazards in the class of "moving machinery or unprotected heights."[2]

### 2. Reasoning Ability

"The DOT's Reasoning Development scale has six levels: Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability." Richardson, 2019 WL 1354042, at * 3. The parties agree that the occupations of laundry folder, electronics worker, and hand packager all require a Reasoning Level of 2. Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. (citing DOT, App. C, 1991 WL 688702, emphasis added by Richardson court).

Plaintiff argues that the reasoning requirements of the three representative occupations "exceed the ALJ's limitations which limit Ms.

---

[2] Plaintiff contends that "the ALJ's basis for including a restriction limiting her exposure to hazards is based on her pain and symptoms which include falling and balance problems…." Doc. 10, p. 8. Plaintiff further argues that "the danger presented by moving machinery and unprotected heights for a worker with a history of falling and balance problems would be similar to the danger presented by the presence of toxic, caustic chemicals." Id. However, Plaintiff does not explain how falling and balance problems would be addressed by limiting Plaintiff's exposure to toxic or caustic chemicals.

9

Fredell to the performance of simple, routine and repetitive tasks in a stable work environment with few changes." Doc. 10, p. 9. Thus, Plaintiff contends "there is an apparent conflict between the ALJ's conclusion that she is limited to simple, routine and repetitive tasks" and jobs requiring Level 2 reasoning ability. Id. at p. 11.

However, Plaintiff's argument – that an RFC limitation to "simple, routine, and repetitive tasks" is in conflict the ability "to carry out detailed but uninvolved written or oral instructions" – has been rejected. Lawrence v. Saul, 941 F.3d 140, 143-44 (4th Cir. 2019) (plaintiff's ability to perform jobs limited to "simple, routine repetitive tasks of unskilled work" did not conflict with Level 2 reasoning); Lambert v. Berryhill, 5:18-cv-28-RJC-DSC, 2019 WL 1354038, at 6 (W.D.N.C. March 26, 2019) ("this Court has consistently held that no apparent conflict exists between a limitation to perform simple, repetitive, routine tasks and jobs with Reasoning Level 2.") (collecting cases); Millan v. Saul, No. 3:18-cv-638-MR, 2019 WL 5957217, at * 6 (W.D.N.C. Nov. 12, 2019) ("a plaintiff's RFC limiting her to simple, routine, repetitive tasks does not conflict with the DOT definition of Level 2 reasoning."); Doll v. Saul, 1:19-cv-85-MOC, 2019 WL 5866156, at * 4 (same).

Accordingly, the undersigned does not find there to be a conflict between the VE's testimony and the descriptions of the representative occupations.

10

### C. The ALJ's Consideration of the FCE and Dr. Maxy's Medical Records

Next, Plaintiff argues that the ALJ failed to weigh properly certain limitations that were found in a February 3, 2012 FCE and subsequently referenced in the treatment notes of Dr. Ralph J. Maxy ("Dr. Maxy").

#### 1. Dr. Maxy's Treatment of Plaintiff

The administrative record indicates that Plaintiff was treated by Dr. Maxy, an orthopedic surgeon, from November 2010 through at least May 2017. See, AR pp. 713-715 & 1164-1167.[3]

On January 1, 2012, Dr. Maxy noted that, since an MRI of Plaintiff's right hip had been denied by Plaintiff's workers' compensation carrier, there [was] very little else [he] c[ould] offer in terms of treatment." He therefore "recommended an FCE to determine if she ha[d] any long-term restrictions…." AR p. 691.

The FCE (AR pp. 454-456) was conducted on February 3, 2012 by a physical therapist and found Plaintiff to be "capable of sustaining the **light level** of work for an **8 hour day**." AR p. 454 (emphasis in FCE). Additionally, the FCE stated Plaintiff was "never" able to "work arms overhead – standing," "work bent over – standing/stooping," "work kneeling," "work bent over –

---

3 According to the November 23, 2010 treatment record, Plaintiff came to see Dr. Maxy "as a consult from her workers compensation carrier for evaluation of back pain." AR p. 713.

11

sitting," or engage in "repetitive squatting." AR p. 455. The FCE further stated Plaintiff could "occasionally" "work squatting/crouching," and engage in repetitive trunk rotation either sitting or standing. Id.

In a February 21, 2012 note, Dr. Maxy stated that "[t]he [FCE] shows [Plaintiff] is able to function safely at the light physical demand level." AR p. 684. Dr. Maxy additionally noted that "[w]e have used the study to give [Plaintiff] the following permanent restrictions, no lifting heavier than 20 pounds. She should also avoid repetitive bending, twisting, or stooping. She should be able to stand or sit as tolerated. She should avoid any overhead work and also avoid any work while in the forward bent position as all of these will exacerbate symptoms significantly." Id.

On June 1, 2012, Dr. Maxy again stated:

> I think she has reached maximum medical improvement and she was given a 20% permanent partial impairment rating based on the North Carolina Industrial Commission Guide and this has not changed. She was given permanent restrictions and those have not changed either. She was given a lifting limit of 20 pounds and she is to avoid repetitive bending, twisting or stooping although she should be able to stand or sit as tolerated. She is to also avoid any overhead work and avoid any work while in the forward bent position as all of these will exacerbate her symptoms.

AR p. 710.

On August 25, 2015, almost three months prior to Plaintiff's alleged

12

disability onset date of November 19, 2015, Dr. Maxy implanted a spinal cord stimulator. AR pp. 1059-1060.

During a follow-up appointment on January 19, 2016, Dr. Maxy noted that "her back pain has improved significantly from the device, however, she still has right heel and right lower extremity symptoms that are not helped." AR p. 969. Dr. Maxy "released" Plaintiff on that date because, "[f]rom a surgical perspective, there is very little else we can add." Id. Significantly, Dr. Maxy further noted: "No change in her permanent partial impairment rating. No change in her permanent restrictions." AR p. 969.

### 2. Dr. Maxy as a "Treating Physician"

"A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time." Smith v. Berryhill, 3:16-cv-272, 2017 WL 5617472, at * 2 (W.D.N.C. Nov. 21, 2017) (citing Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983)). The Administrative Record shows that Dr. Maxy provided care to Plaintiff consistently over a prolonged period and therefore was her treating physician.

According to the Social Security Regulations, an ALJ "is required to give 'controlling weight' to opinions proffered by a claimant's treating physicians so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Lewis v. Berryhill, 858

13

F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (alterations in original)). "The regulation's treating physician rule accords the greatest weight—controlling weight—to the opinions of treating sources, because those 'sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.'" Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this case, Plaintiff argues that the ALJ failed to consider "the February and June 2012 medical opinions and permanent physical restrictions issued by her longtime treating orthopedic specialist, Dr. Maxy." Doc. 10 at 12.

Defendant disagrees and contends that Dr. Maxy's notes in February and June 2012 were not his "opinions" but were solely based on the FCE that had been performed by a physical therapist at Dr. Maxy's request. Doc. 12 at 12-13.

Whether Dr. Maxy's incorporation of the specific physical limitations set forth in the FCE should be considered to be a treating physician's opinion that is potentially entitled to controlling weight is a close question.

The FCE was performed during a one-time evaluation conducted by a

14

physical therapist well prior to both Plaintiff's amended alleged onset date and the implantation of the spinal cord stimulator. Yet, Dr. Maxy "used" the FCE to impose specific physical restrictions on Plaintiff, AR p. 684, and Dr. Maxy continued those physical restrictions after implantation of the spinal cord stimulator and despite his recognition that Plaintiff's back pain was helped significantly by the stimulator. AR p. 969. Considering Dr. Maxy's longitudinal pattern of care, his adoption of the FCE limitations into his treatment notes, and the expression of those limitations as his own, the undersigned is persuaded that the specific physical limitations should be considered part of Dr. Maxy's medical opinion.

### 3. The ALJ's Analysis

In his decision, the ALJ referenced Dr. Maxy's treatment notes. AR p. 29.

Additionally, the ALJ discussed the FCE and "gave some weight" to its indication that Plaintiff "could perform light work," a finding the ALJ stated was "fairly consistent with the longitudinal records that include fairly minimal objective findings and document fairly good pain control with medication." AR pp. 31-32. The ALJ did not give the findings from the FCE greater weight because it was performed several years prior to the time period at issue and prior to the implantation of the spinal cord stimulator. AR pp. 31-32.

Likewise, the ALJ concluded that Plaintiff reported significant pain

15

relief and the need for less pain medication following implantation of the spinal cord stimulator, a conclusion the undersigned finds to be supported by substantial evidence. See, AR p. 950 (March 26, 2016 treatment record from pain management doctor, Dr. Tiffany, reflecting that Plaintiff reported she "is very pleased. She has taken very few pain pills in the last month, and she is gradually increasing her activity level."); AR p. 945 (July 25, 2016 note by Dr. Tiffany stating that Plaintiff "gets good relief from [the stimulator]. She is still having ongoing need for medication, but it is quite minimal" and reflecting that Plaintiff was in no acute distress, rose slowly from sit to standing, and had a normal gait.); AR p. 1162 (February 7, 2017 treatment note reflecting Plaintiff reported that her "SCS is working effectively and it allows her to take less pain medication."). See also, AR pp. 964, 963, 960 (Physical Therapy notes reflecting 0/10 pain rating following February 2, 2016 session, 5/10 pain rating at February 4, 2016 session, and 3/10 pain rating at February 8, 2016 session).

The ALJ's decision, however, does not indicate whether the ALJ considered Dr. Maxy's treatment notes to be Dr. Maxy's "opinion" evidence and does not describe how much weight the ALJ gave to that information.

In addition, the ALJ's analysis does not discuss how the ALJ viewed the fact that Dr. Maxy continued to impose the limitations set out in the February 3, 2012 FCE *after* the spinal cord stimulator had been implanted. That is, while the FCE (as well as Dr. Maxy's February and June 2012 treatment notes) pre-

16

date implantation of the spinal cord stimulator, Dr. Maxy explicitly stated after implantation of the spinal cord stimulator that there was no change in Plaintiff's physical restrictions even while recognizing that Plaintiff's "back pain has improved significantly from the device…" AR p. 969.

The opinion of Dr. Maxy, as Plaintiff's treating physician, "is entitled to controlling weight unless the ALJ finds his opinion to either be not 'well-supported' by appropriate techniques or inconsistent with the rest of the medical record." Smith, 2017 WL 5617412, at * 2.

On the current record, however, the undersigned is unable to determine whether Dr. Maxy's opinions have been fully considered and, therefore, remand will be recommended on this basis.[4] The ALJ's failure to consider the specific physical restrictions set out in Dr. Maxy's post-stimulator treatment note was not harmless error, because those specific physical limitations are more limited that those set out in Plaintiff's RFC.

### D. The RFC

Because the undersigned recommends remand based on the ALJ's treatment of Dr. Maxy's records, it is not necessary to reach Plaintiff's last

---

[4] The undersigned does not conclude that the ALJ erred by failing to give controlling weight to Dr. Maxy's opinions. Indeed, on remand, the ALJ may ultimately determine that the physical restrictions set out in Dr. Maxy's treatment records are "inconsistent with the other substantial evidence" in the Administrative Record. See, Lewis, 858 F.3d at 867. Rather, the issue is that the ALJ failed to describe how he considered the opinion evidence from Plaintiff's treating physician, Dr. Maxy.

argument that "[t]he ALJ failed to conduct a proper function-by-function analysis of Ms. Fredell's impairment…and provide a logical bridge between the evidence in the record and his RFC conclusions." Doc. 10, pp. 15-16.

However, in the event the recommendation regarding the treatment of Dr. Maxy's opinions is not adopted, the undersigned is not persuaded by Plaintiff's final argument. A "function-by-function" analysis was conducted by the state agency consultants, see, AR pp. 105 & 83, and "an ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." Herren v. Colvin, 1:15-cv-2-MOC, 2015 WL 5725903, at * 5 (W.D.N.C. Sept. 30, 2015) (collecting cases).

Here, in developing Plaintiff's RFC, the ALJ assigned "some weight" to the state agency consultants' opinions, AR p. 32, and the physical limitations set out in Plaintiff's RFC – that Plaintiff is capable of light work "except she [is] limited to frequent postural limitations in all postural spheres, no more than frequent overhead reaching bilaterally…" – comport with the state agency consultants' proposed limitations.

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 9) be granted and that the Commissioner's motion for summary judgment (Doc. 11) be denied.

Signed: December 20, 2019

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).